119 P.3d 616

**STATE of Hawai'i, Plaintiff–Appellee,**

v.

**Rhudel G. GASTON, Defendant–Appellant.**

**No. 26849.**

Intermediate Court of Appeals of Hawai'i.

Aug. 12, 2005.

Reconsideration Denied Aug. 29, 2005.

Certiorari Denied Sept. 12, 2005.

Earle A. Partington, Honolulu, on the briefs, for Defendant–Appellant.

Anne K. Clarkin, Deputy Prosecuting Attorney, City and County of Honolulu, on the briefs, for Plaintiff–Appellee.

BURNS, C.J., LIM and NAKAMURA, JJ.

Opinion of the Court by LIM, J.

Rhudel Gawat Gaston (Defendant or Gaston) appeals the September 21, 2004 judgment of the District Court of the First Circuit (district court),[1] as amended on September 23, 2004, that convicted him of driving under the influence of an intoxicant (DUI); namely, alcohol.[2] Defendant contends the district court convicted him on insufficient evidence, and in doing so offended due process. We disagree, and affirm.

## I. Background.

At the September 21, 2004 bench trial, Honolulu Police Department (HPD) officer Jason Pistor (Officer Pistor) testified that on February 1, 2004, he was called to a car accident on the H–1 Freeway, westbound. When Officer Pistor arrived, he saw a light pole lying on the ground across an off-ramp, along with a traffic sign also supine. A red Mustang hung transfixed on a guardrail.

---

1. The Honorable Michael A. Marr presided.

2. Hawaii Revised Statutes § 291E–61(a)(1) (Supp.2004) provides: "A person commits the offense of operating a vehicle under the influence of an intoxicant if the person operates or assumes actual physical control of a vehicle: While under the influence of alcohol in an amount sufficient to impair the person's normal mental faculties or ability to care for the person and guard against casualty[.]" (Enumeration omitted; format modified.)

Officer Pistor spoke with Defendant, who was the only person there. "He reported that he was driving westbound at 60 miles per hour, and he took the offramp and veered off and hit a utility pole." Standing about two feet away, Officer Pistor could see that Defendant's face was flushed and his eyes were "a little bit red." Officer Pistor detected the odor of an alcoholic beverage on Defendant's breath. Defendant was unsteady on his feet—"He seemed to be, you know, moving like he was losing his balance, not losing his balance, like falling on the ground, but seemed like he had a hard time standing.... And like, when he would walk around, he seemed like he was kine'a moving around." Officer Pistor's investigation of the accident revealed that the Mustang had hit the light pole, then the traffic sign, and ended up "impaled on top of the guardrail."

On cross-examination, Officer Pistor acknowledged the possibility that a person might be shaken up in an accident like Defendant's, and that Defendant's demeanor was consistent with that. Officer Pistor added, however, that Defendant's demeanor was also consistent with impairment by alcohol. Officer Pistor admitted that he did not know when the accident happened. Asked if he knew whether Defendant had drunk any alcohol after the accident, Officer Pistor was noncommittal: "He didn't report that." Pressed, Officer Pistor allowed that he did not know. Finally, Officer Pistor confirmed that his testimony about Defendant's flushed face, red eyes and difficulty standing was not reflected in his police report.

Under successive recross-examinations, Officer Pistor agreed that people who have not been drinking get into traffic accidents, and that the odor of alcohol on a person's breath does not necessarily mean that the person is under the influence of alcohol. Officer Pistor confirmed that Defendant's eyes were neither watery nor glassy.

HPD officer Emalia Keawe (Officer Keawe) was the other witness at trial. She remembered being called to the scene of an accident a little after midnight on February 1, 2004. When she arrived, an ambulance was already there and Defendant was being examined by the paramedics. Defendant told Officer Keawe that he had lost control of his vehicle. From a foot or two away, Officer Keawe noticed that Defendant's eyes were glassy. She also discerned the odor of an alcoholic beverage when he spoke.

Based upon her observations of Defendant's demeanor, Officer Keawe asked him to take some field sobriety tests (FSTs). Defendant agreed. During the one-legged-stand test, Defendant put his foot down before the full thirty seconds had elapsed, then refused to continue. Also, Defendant swayed and kept one of his arms raised throughout the test. During the walk-and-turn test, Defendant took more steps coming and going than instructed, and several of them were not heel-to-toe.

On cross-examination, Officer Keawe acknowledged that she did not know whether Defendant had consumed any alcohol after the accident. She confirmed that her FST form indicated that Defendant's eyes were red, watery, bloodshot and glassy. Officer Keawe agreed that during the walk-and-turn test, Defendant did not start too soon, raise his arms, step off the line or stop en route. And that during the one-legged-stand test, Defendant did not hop and was able to hold his foot up for at least twenty seconds. Officer Keawe admitted that she did not know whether Defendant's impairments were alcohol- or accident-related. But, "Based on what I observed, I assumed it was from the alcohol." Officer Keawe also agreed that the FSTs are not infallible when it comes to impairment. When asked whether Defendant was cooperative during their encounter, Officer Keawe replied, "For the most part."

Defendant did not offer any evidence. The district court decided as follows:

> The Court is ready to rule on defendant's case. The State has admitted that it's unable to lay a proper foundation as to the FST. the [sic] Court will, therefore, consider Officer Keawe's opinions as lay opinions in regard to whether or not defendant was intoxicated.
>
> Now the FST, defendant obviously was, the testimony in the case said he was able to follow some instructions and he wasn't able to follow others. And as I indicated

to [defense counsel] during his closing remarks, obviously somebody that's been in an accident, I agree with him totally, they're not gonna be able to perform the FST at least as well as a person who has not been in an accident.

However, at the same time, the evidence to me appears to be overwhelming in that defendant's losing control of his vehicle was due to alcohol. He was impaired, alcohol impaired his ability to drive. It wasn't due to any ordinary negligence, for example, what you suggested reaching down to pick up something. That's not how the Court sees this case, nor it [sic] was defendant able to guard against casualty. That's obvious from the accident.

This is a one-car accident. It happened around midnight. There wasn't too much traffic on the road, thank goodness. The defendant lost, admitted losing control of his vehicle and hitting a guardrail. His face was flushed. According to Officer Pistor, his eyes were red. According to Officer Keawe, his eyes were glassy.

He had a, according to both officers who were standing within a couple feet of the defendant, was an alcoholic, there was odor of an alcoholic beverage emanating from his breath while he spoke. This to me all indicates the defendant, that alcohol was a factor in this accident and the Court will, therefore, find the defendant guilty as charged, that the State has proven its case beyond a reasonable doubt.

## II. Discussion.

### A.

■■■■ Defendant first contends there was insufficient evidence to convict him. It is well established that

evidence adduced in the trial court must be considered in the strongest light for the prosecution when the appellate court passes on the legal sufficiency of such evidence to support a conviction; the same standard applies whether the case was before a judge or a jury. The test on appeal is not whether guilt is established beyond a reasonable doubt, but whether there was substantial evidence to support the conclusion of the trier of fact. Indeed, even if it

could be said in a bench trial that the conviction is against the weight of the evidence, as long as there is substantial evidence to support the requisite findings for conviction, the trial court will be affirmed.

"Substantial evidence" as to every material element of the offense charged is credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion. And as trier of fact, the trial judge is free to make all reasonable and rational inferences under the facts in evidence, including circumstantial evidence.

State v. Eastman, 81 Hawai'i 131, 135, 913 P.2d 57, 61 (1996) (brackets, citations, block quote format and some internal quotation marks omitted). Furthermore, "The appellate court will neither reconcile conflicting evidence nor interfere with the decision of the trier of fact based on the witnesses' credibility or the weight of the evidence." State v. Mitchell, 94 Hawai'i 388, 393, 15 P.3d 314, 319 (App.2000) (citations and block quote format omitted).

Defendant's overarching point on appeal is that the quantum of evidence of alcohol impairment in this case does not, as a matter of law, rise to the level of substantial evidence. See Eastman, 81 Hawai'i at 135, 913 P.2d at 61. As Defendant declares in his reply brief, "A line must be drawn somewhere and, in a case such as this, ... there is a reasonable doubt and Gaston should have been acquitted." Reply Brief at 3. We disagree. The evidence of alcohol impairment present in this case rivals that which we have previously held to be, substantial at the very least.

In State v. Ferm, 94 Hawai'i 17, 7 P.3d 193 (App.2000), we deemed the following evidence substantial:

Teruya [ (a paramedic) ] and each of the police officers who went to the scene, reported smelling an alcoholic beverage on Defendant's breath. Kahalepuna [ (a security guard) ] and Officers Yoshimura, Cervantes and Beam observed that Defendant was extremely unsteady in his movements. Defendant's eyes were glassy and bloodshot. Officers Yoshimura, Cervantes and

Beam reported that Defendant's speech was slurred.

Furthermore, Defendant admitted to Teruya, Officer Cervantes and his own expert witness, Dr. Kienitz, that he had consumed alcohol before the accident. And the circumstances of the accident [ (hitting a parked pickup truck) ] speak for themselves.

*Id.* at 27, 7 P.3d at 203. In *Mitchell, supra,* we decided that the following evidence was "overwhelming and compelling":

The testimonies of the police officers painted a classic portrait of intoxication. Mitchell's breath was redolent of alcohol. His speech was slurred. His eyes were red, bloodshot and watery. He was hostile and belligerent. He had difficulty walking. He was swaying and unsteady on his feet; indeed, he had difficulty standing and instead leaned against his vehicle.

In addition, Mitchell admitted that he had been drinking before the accident—"just having a couple of beers"—and that he was in no condition to drive. Though Mitchell attributed his inability to drive to medication, the influence of the medication is immaterial under the law. "Where a defendant's intoxication is due in any part to alcohol, it is immaterial that the defendant might also have been affected by other drugs." *[State v.] Vliet,* 91 Hawai'i 288,] 294, 983 P.2d [189,] 195 [ (1999) ]. As the *Vliet* court also noted, "nothing in the DUI statute requires that alcohol be the sole or exclusive cause of a defendant's impairment. Rather, what is required is proof beyond a reasonable doubt that liquor contributed to the diminishment of the defendant's capacity to drive safely." *Id.* at 293, 983 P.2d at 194. Mitchell's admissions provided—in and of themselves and in spite of their exculpatory intent—all of the required proof.

Finally, we cannot ignore the circumstances of the accident. When combined with the evidence of extreme intoxication, evidence that Mithell's [sic] car rear-ended another vehicle crowns the conclusion that there was "a wealth of overwhelming and compelling evidence tending to show the defendant guilty beyond a reasonable doubt." *[State v.] Toyomura,* 80 Hawai'i 8,] 27, 904 P.2d [893,] 912 [ (1995) ] (citation omitted). Given such a conclusion, we can conclude that the court's error in admitting evidence of the [Horizontal Gaze Nystagmus] test results was harmless beyond a reasonable doubt.

*Mitchell,* 94 Hawai'i at 398–400, 15 P.3d at 324–26 (original brackets omitted).

Nonetheless, Defendant persists in arguing that the evidence was insubstantial:

The district court found that the evidence was "overwhelming" that Gaston's loss of control of his car leading to the accident was a result of alcohol. The district court based this on the following evidence: Gaston admitted losing control of his vehicle and hitting a guardrail, Officer Pistor said that Gaston's face was flushed and his eyes were red, Officer Keawe said Gaston's eyes were glassy and both officers said that Gaston had the odor of alcohol on his breath. For the district court, this was enough to find that "alcohol was a factor in this accident" and, therefore, Gaston was guilty of DUI. The district court discounted the [FST] evidence because it recognized that the severity of the accident could account for Gaston's performance regardless of alcohol.[3]

The district court, in its findings, did not discuss the following evidence. Neither police officers [sic] knew if Gaston had had any alcohol to drink after the accident. Neither officer could say for sure that Gaston was DUI and there was no chemical test. Officer Pistor acknowledged that not all drivers who lose control of their vehicle do so because they have been drinking nor does the odor of alcohol on a driver's breath mean that the driver is DUI. Officer Pistor had testified that Gaston had appeared flushed, had trouble standing, and his eyes were red but the

---

3. The record shows that the District Court of the First Circuit (district court) recognized impairment suffered in the accident as a plausible cause for Rhudel Gawat Gaston's spotty performance on the field sobriety tests (FSTs). The record does not show, however, that the district court "discounted" the FST evidence.

officer had *not* recorded *any* of this in his report. Officer Pistor testified that Gaston's eyes were neither watery nor glassy. Officer Keawe, on the other hand, claimed that Gaston did have glassy eyes. Officer Keawe considered the accident a serious one.

Opening Brief at 8–9 (emphases in the original; original footnote omitted). These are arguments on the weight and credibility of the evidence. As such, they are unavailing, for the weight and credibility of the evidence fell within the exclusive province of the district court. *Mitchell,* 94 Hawai'i at 393, 15 P.3d at 319.

Defendant also states, generally, that "when the evidence presented is circumstantial, it must exclude all rational conclusions except guilt in order to be sufficient to convict[,]" Opening Brief at 12 (brackets, citation and internal quotation marks omitted); and argues, specifically, that the State was required, but failed, to prove that the accident was not a cause of his impairment. We disagree, both generally and specifically.

■ Generally, "a case of circumstantial evidence does not require, in addition to a general instruction on 'proof beyond a reasonable doubt' applicable to both direct and circumstantial evidence, instruction that the circumstantial evidence be 'inconsistent with every reasonable hypothesis of innocence' or 'foreclose the hypothesis of innocence.'" *Ferm,* 94 Hawai'i at 26, 7 P.3d at 202 (brackets omitted) (quoting *State v. Bush,* 58 Haw. 340, 344, 569 P.2d 349, 352 (1977)).

■ Specifically, "'nothing in the DUI statute requires that alcohol be the sole or exclusive cause of a defendant's impairment. Rather, what is required is proof beyond a reasonable doubt that liquor contributed to the diminishment of the defendant's capacity to drive safely.'" *Mitchell,* 94 Hawai'i at 400, 15 P.3d at 326 (brackets omitted) (quoting *Vliet,* 91 Hawai'i at 293, 983 P.2d at 194).

Finally, Defendant cites a number of cases from foreign jurisdictions in support of the proposition that each factor of impairment present in this case is not—in and of itself and alone—sufficient to prove alcohol impairment beyond a reasonable doubt. The short answer to this argument is that each factor concurred in this case, and was not alone.

In sum, we conclude there was substantial and therefore sufficient evidence before the district court to support Defendant's conviction. *See Eastman,* 81 Hawai'i at 135, 913 P.2d at 61.

## B.

For his other point of error on appeal, Defendant avers that conviction on less than proof beyond a reasonable doubt "violates the Due Process Clauses of § 1 of the Fourteenth Amendment to the United State Constitution and Art. I, § 5 of the Hawaii Constitution." Opening Brief at 13. This is axiomatic, but immaterial here. "The test on appeal is not whether guilt is established beyond a reasonable doubt, but whether there was substantial evidence to support the conclusion of the trier of fact." *Eastman,* 81 Hawai'i at 135, 913 P.2d at 61 (citations, internal quotation marks and block quote format omitted). We have already decided that Defendant's guilt was grounded in substantial and therefore sufficient evidence. Defendant informs us that, in any event, "This argument is a direct corollary to the first argument and is necessary to insure that his right of federal review is preserved." Reply Brief at 3. So be it.

## III. Conclusion.

Accordingly, the September 21, 2004 judgment of the district court, as amended on September 23, 2004, is affirmed.